[No. F003086. Fifth Dist. Feb. 26, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST LEE MALONE, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Parts II, III, IV and V are not published, as they do not meet the standards for publication contained in California Rules of Court, rule 976(b).

**COUNSEL**

Richard A. Lieberman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and James T. McNally, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**HANSON (P. D.), J.—**

I

Appellant was convicted by court trial of first degree felony murder with an attending "special circumstance" that he had suffered a previous convic-

tion for second degree murder (Pen. Code, §§ 187, 189, 190.2, subd. (a)(2); count I),[2] two counts of robbery (§ 211, counts III and IV), and burglary (§ 459, count V). Appellant received a sentence of life imprisonment without possibility of parole on count I, and consecutive middle base terms on counts III through V, with the sentences in counts III and IV stayed pursuant to section 654.

Appellant challenges his sentence of life imprisonment without possibility of parole alleging a violation of the tenets of *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862] and *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]. Appellant, who was found to be neither the actual killer nor an intentional aider and abettor in the commission of murder in the first degree, both of which necessitate an intent to kill in order for special circumstances to be imposed under *Carlos* and its progeny, received a sentence of life imprisonment without the possibility of parole because he previously was convicted of murder which the trial court understood to require the imposition of a special circumstance under section 190.2, subdivision (a)(2), of the death penalty initiative.

Count I of the information charged appellant with murder and enumerated the following special circumstances: The murder was committed for financial gain (§ 190.2, subd. (a)(1)), appellant previously had been convicted of second degree murder (§ 190.2, subd. (a)(2)), and the murder was committed while appellant and his accomplice and brother, Cecil Howard, were engaged in the commission of robbery (§ 190.2, subd. (a)(17)(i)) and burglary (§ 190.2, subd. (a)(17)(vii)). The trial court rejected the alleged felony-murder "special circumstances" because of lack of evidence to support a finding that appellant intentionally aided and abetted his accomplice in the commission of murder in the first degree within the meaning of section 190.2, subdivision (b). However, the court in a separate proceeding (§ 190.1, subd. (b)) determined appellant had suffered a previous second degree murder conviction within the meaning of section 190.2, subdivision (a)(2). The court, finding no statutory impediment, proceeded to the penalty phase, determined the factors in mitigation outweighed those in aggravation and sentenced appellant to life imprisonment without possibility of parole.

II*

. . . . . . . . . . . . . . . . . . . . . .

---

[2]All statutory references are to the Penal Code unless otherwise indicated.

*See footnote 1, *ante,* page 31.

## VI

*The Special Circumstance of a Previous Conviction of Second Degree Murder (Pen. Code, § 190.2, Subd. (a)(2)).*

 Our question is whether the trial court's finding that appellant was not the actual killer and did not intentionally aid and abet another in the commission of murder in the first degree prohibits application of the special circumstance of murder with a prior murder conviction. (Pen. Code, § 190.2, subd. (a)(2).) It is not necessary to relate the facts of the robbery and the vicious beating resulting in the death of one of the victims for this discussion of the application of the statute.

Appellant contends the trial court's determination that he was not the actual killer prohibits application of section 190.2, subdivision (a)(2). We agree that the special circumstance does not apply, but not for the reasons offered by appellant.

Appellant argues that the liability of *actual killers* is determined under the various special circumstances provisions listed in section 190.2, subdivision (a), while the liability of *accomplices* is determined pursuant to subdivision (b), exclusively. Subdivision (a)(2) is excluded from the subdivision (b) provision; it is in fact the only one of the enumerated special circumstances which is not listed in subdivision (b). Accordingly, appellant argues there is no provision in the special circumstances law to sentence an accomplice in a first degree murder to death or life imprisonment when the only special circumstance alleged is that the defendant previously was convicted of murder. (§ 190.2, subd. (a)(2).)

Section 190.2 provides in pertinent part: "(a) The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in state prison for a term of life without the possibility of parole in any case in which one or more of the following special circumstances has been charged and specially found under Section 190.4 to be true:

"· · · · · · · · · · · · · · · · · · · · · · ·

"(2) The defendant was previously convicted of murder in the first degree or second degree. . . .

"· · · · · · · · · · · · · · · · · · · · · · ·

"(b) Every person whether or not the actual killer found guilty of *intentionally* aiding, abetting, counseling, commanding, inducing, soliciting, re-

questing, or assisting any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in paragraphs (1), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17), (18), or (19) of subdivision (a) of this section has been charged and specially found under Section 190.4 to be true." (Italics added.)

To support his interpretation of the statute, appellant cites *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131. The Supreme Court in *Carlos* concluded that the 1978 death penalty initiative (§ 190.2, subd. (a)) should be construed to require an intent to kill or to aid in a killing as an element of the felony-murder special circumstances. Although the requirement of an intent to kill was not listed in the felony-murder special circumstances included in subdivision (a)(17) of section 190.2,[6] the court determined that subdivision (a) had to be read in conjunction with subdivision (b).

Under the 1977 law, felony murder was viewed as a special circumstance "only in the case of a defendant, physically present at the crime scene, who intentionally commits or aids a deliberate and premeditated murder." (*Carlos* v. *Superior Court, supra,* 35 Cal.3d at p. 139; Stats. 1977, ch. 316, § 9, pp. 1257-1258.) Nothing in the voter pamphlet or summary of the Attorney General indicated that the requirement of intent would be deleted by the 1978 voter initiative.

In place of the provision of the 1977 law requiring physical presence and an intention to cause death "appears a new section (190.2, subd. (b)), of uncertain effect, but apparently designed to equate the liability of actual killers and their accomplices. This section, . . . by its terms applies to all special circumstances except that of [a] previous murder conviction (§ 190.2, subd. (a), (2)), . . ." (*Carlos* v. *Superior Court, supra,* 35 Cal.3d at p. 140.) Appellant interprets the conspicuous absence of the subdivision (a)(2) enhancement from subdivision (b) to mean that the framers of the initiative intended to exclude nonkillers who have committed prior murders from the imposition of enhanced penalties under the 1978 death penalty law.

Respondent contends, however, that section 190.2, subdivision (b), is a jurisdictional prerequisite to proceeding from the guilt to the penalty phase

---

[6]Section 190.2, subdivision (a)(17), provides in pertinent part: "(17) The murder was committed while the defendant was engaged in or was an accomplice in the commission of, attempted commission of, or the immediate flight after committing or attempting to commit the following felonies: [¶] (i) Robbery . . . [¶] (ii) Kidnapping . . . [¶] (iii) Rape . . . [¶] (iv) Sodomy . . . [¶] (v) The performance of a lewd or lascivious act upon [the] person of a child under the age of 14 . . . [¶] (vi) Oral copulation . . . [¶] (vii) Burglary . . . [¶] (viii) Arson . . . [¶] (ix) Train wrecking . . . ."

in a special circumstance hearing in 18 of the 19 enumerated special circumstances and the only exception is the special circumstance involving a prior murder conviction. According to respondent, there is no need to find that an aider and abettor to a first degree murder acted with an intent to assist a killing when the alleged special circumstance is a prior murder conviction.[7]

Respondent's interpretation finds support in the genesis of the 1978 death penalty law. Former provision 190.2 included among those special circumstances necessitating an intent to kill for a perpetrator or an aider and abettor to be liable for first degree murder with attending special circumstances, the special circumstance involving a prior murder. Former section 190.2 stated: "The penalty for a defendant found guilty of murder in the first degree shall be death or confinement in the state prison for life without possibility of parole in any case in which one or more of the following special circumstances has been charged and, specially found, in a proceeding under Section 190.4, to be true:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"The defendant was personally present during the commission of the act or acts causing death, and with intent to cause death physically aided or committed such act or acts causing death and any of the following additional circumstances exists:

". . . . . . . . . . . . . . . . . . . . . . . . . .

"(5) The defendant has in this proceeding been convicted of more than one offense of murder in the first or second degree, or has been convicted in a prior proceeding of the offense of murder of the first or second degree." (Stats. 1977, ch. 316, § 9, pp. 1257-1258.)

Because the new death penalty law was passed by voter initiative, we do not know that the framers of the law intended to exclude from the requirement of an intent to kill those accomplices to first degree murder with a prior murder conviction; however, the fact that subdivision (a)(2) was deleted from subdivision (b) might be indicative of such an intent.

The Legislative Analyst's discussion contained in the voter pamphlet is not helpful in resolving the problem. The analysis there suggests the purpose of subdivision (b) was to govern the liability of accomplices; it states that

---

[7]Appellant's record indicates a 1978 conviction for second degree murder for the fatal beating of a victim; appellant was sentenced to CYA.

the "proposition would specifically make persons involved in the crime other than the actual murderer subject to the death penalty or life imprisonment without possibility of parole *under specified circumstances.*" (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) Prop. 7, Analysis by Legis. Analyst, p. 32, italics added.)

Subdivision (a)(2) is not one of those "specified circumstances" under which death or life imprisonment without possibility of parole can be imposed under the auspices of subdivision (b). However, in the voter pamphlet analysis, subdivision (a)(2) under both pre- and post-1978 law is characterized as a special circumstance applicable when the "murderer has been convicted of more than one offense of murder in the first or second degree." (*Id.,* at p. 32.)

"Murderer" as used in this context is synonymous with both an "actual killer" and an "aider and abetter"; thus, subdivision (b) would not be a jurisdictional prerequisite to accomplice liability but merely a limitation on imposing liability under each of the enumerated 18 special circumstances, except that of a previous murder conviction.

Arguably, the language cited by appellant and respondent supports their respective positions, and is not inconsistent with either position. The express terms of the death penalty initiative do not provide a clear answer to the dilemma, and while we find faults and merits in each party's interpretation of the statute, we are persuaded by neither interpretation.

However, respondent's position that the statute permits imposition of death or life imprisonment, whether the defendant was an actual killer or an aider or abetter, with no intent to kill, in the language of *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, "poses grave moral and legal issues." (*Id.,* at p. 134.) In fact, *Carlos* intimated that such a holding violates equal protection and the constitutional proscription against cruel and unusual punishment. "A statute which threatens to impose the death penalty, or life without possibility of parole, upon a defendant who did not intend to kill, while permitting some deliberate killers to escape with lesser punishment, might on its face violate the cruel and unusual punishment or equal protection clauses." (*Id.,* at p. 136.)

A statute should be interpreted to avoid such issues concerning constitutionality. This rule was the basis of the *Carlos* holding that the 1978 death penalty initiative should be construed to require an intent to kill or an intent to aid in a killing as an element of the felony-murder special circumstances. (*Id.,* at pp. 134-135.) We conclude such an intent is also constitutionally mandated when the special circumstance provision alleged

is that the defendant previously was convicted of murder (§ 190.2, subd. (a)(2)).

The fact that more than one individual has been unintentionally killed in a criminal transaction has not swayed the Supreme Court in its analysis of these constitutional questions. In *People* v. *Turner* (1984) 37 Cal.3d 302, 328 [208 Cal.Rptr. 196, 690 P.2d 669], the court concluded that two first degree felony murder convictions, "neither of which alone [could] justify imposition of the death penalty" because the deaths were both unintentional, could not "together open the door to a death penalty hearing." (*Id.,* at p. 328.)

An argument could be made that for equal protection purposes, criminal defendants convicted of felony murder and subsequently convicted of first degree felony murder, the murders being unintentional, are not similarly situated to those defendants convicted of more than one offense of felony murder in the same proceeding, neither killing being intentional, because of the policy of punishing a recidivist more severely. However, such an argument breaks down under scrutiny of recent decisions analyzing the interplay between the provisions of section 190.2, subdivision (a)(2), and (a)(3).

In *Shamburger* v. *Superior Court* (1984) 160 Cal.App.3d 484 [207 Cal.Rptr. 586], the court held that though the trial court is obligated to dismiss the special circumstances allegation that the defendant "has in this proceeding been convicted of more than one offense of murder in the first or second degree" under section 190.2, subdivision (a)(3),[8] when the defendant successfully moves for severance of the two murder charges against him, "severance automatically confer[s] on the prosecutor the right to amend the information to charge the special circumstance that the defendant 'was previously convicted of murder in the first degree or second degree.' (Pen. Code, § 190.2, subd. (a)(2).)" (*Id.,* at p. 485.)

In *Shamburger,* the defendant petitioned the Court of Appeal to order a dismissal of the special circumstances allegation after severance of the two murder charges had been granted because after severance for separate trials, the requirement that the murder convictions be sustained in the same "proceeding" as found in subdivision (a)(3) could not be met. The petitioner relied on the recent Supreme Court decision of *Williams* v. *Superior Court* (1984) 36 Cal.3d 441 [204 Cal.Rptr. 700, 683 P.2d 699]. In *Williams,* the

---

[8]Section 190.2, subdivision (a)(3), provides: "(a) The penalty for a defendant found guilty of murder in the first degree shall be death or . . . life [imprisonment] without the possibility of parole in any case in which . . . [¶] (3) The defendant has *in this proceeding* been convicted of more than one offense of murder in the first or second degree." (Italics added.)

Supreme Court held that the statutory preference for joinder of transactionally related offenses under Penal Code section 954 must not be used "to deny a criminal defendant's fundamental right to due process and a fair trial." (*Id.,* at p. 448.)[9] The issue of prejudice reached extremely grave proportions in the *Williams* case where one of the charged crimes was a capital offense carrying a possible death sentence. The court stated: "The final consideration in our analysis is that since one of the charged crimes is a capital offense, carrying the gravest possible consequences, the court must analyze the severance issue with a higher degree of scrutiny and care than is normally applied in a noncapital case. Even greater scrutiny is required in the instant matter, for it is the joinder *itself* which gives rise to the special circumstances allegation of multiple murder under Penal Code section 190.2, subdivision (a)(3). If the cases are severed, then under section 190.2, subdivision (a)(2), the possibility of the death penalty arises *only if* there is a conviction for murder in the first case to be tried. It is therefore of the utmost importance that we consider the cases both separately and together in order to fairly assess whether joinder would tend to produce a conviction when one might not be obtainable on the evidence at separate trials. Clearly, joinder should never be a vehicle for bolstering either one or two weak cases against one defendant, particularly where conviction in both will give rise to a possible death sentence." (36 Cal.3d at p. 454; fns. omitted.) In *Shamburger,* the court, relying upon *Williams,* rejected the petitioner's attempt to avoid a death penalty trial by his argument that section 190.2, subdivision (a)(2), applied only when the second homicide took place *after* the first conviction. The *Shamburger* court stated: "*Williams,* by clear inference, rejects [petitioner's] argument. Speaking of charges that were joined together, the court . . . stated that after severance the possibility of the death penalty would arise only under section 190.2, subdivision (a)(2). This statement could not have been made by a court holding petitioner's view that under section 190.2, subdivision (a)(2), the second murder must take place after the first conviction. Petitioner's hypothetical murders could never be jointly charged." (*Shamburger* v. *Superior Court, supra,* 160 Cal.App.3d at p. 487.)

Under respondent's interpretation of subdivision (a)(2), it would be more than wise for all criminal defendants faced with a charge of multiple murders in a single proceeding to refrain from moving for severance regardless

---

[9]Penal Code section 954 provides in pertinent part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, . . .; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately."

of the extreme prejudice that might occur from cross-admissibility of evidence. This is so because under the *Turner* and *Williams* decisions, an intent to kill or an intent to aid in a killing is necessary for a finding of special circumstances under subdivision (a)(3), whereas, according to respondent, no such intent is necessary if severance occurs, the crimes are charged separately, and the truth of the prior murder charged under subdivision (a)(2) is subsequently established in a separate proceeding under section 190.1, subdivision (b).

To force the above choice upon the criminal defendant creates an absurd result, is contrary to the *Williams* decision, and is a serious infringement upon due process rights.[10] ▆ When there is ambiguity in the statutory language, as was stated in *People* v. *Nunez* (1984) 162 Cal.App.3d 280 [208 Cal.Rptr. 450], " 'It is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit; . . .' " (*Id.*, at p. 284, quoting *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)

▆ Pursuant to the *Carlos* decision, the requirement of intent must be read into the statute to avoid the constitutional prohibition against cruel and unusual punishment. Because the trial court determined no such intent to kill or to aid in a killing existed in this case, the special circumstance finding as to appellant must be vacated; the punishment of life imprisonment without the possibility of parole may not be imposed.

The judgment as to guilt is affirmed; the finding of special circumstance is vacated and the case remanded for sentencing in accordance with the views expressed in this opinion.

Franson, Acting P. J., and Martin, J., concurred.

---

[10]Just as unacceptable is the situation appellant proposes. Appellant mischaracterizes the function of subdivision (b) which is one of limitation or definition concerning accomplice liability, and is not a jurisdictional prerequisite to that liability. Liability of accomplices and of actual killers is not divided into distinct subdivisions of (a) and (b); the language of section 190.2, subdivision (a), indicates no distinction between actual killers and accomplices. Subdivision (a)(17), listing the felony-murder special circumstances, by its terms applies to accomplices.