[Crim. No. 42012. Second Dist., Div. Five. Jan. 6, 1983.]

In re CASSANDRA R., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
CASSANDRA R., Defendant and Appellant.

[Crim. No. 42968. Second Dist., Div. Five. Jan. 6, 1983.]

In re CASSANDRA R., a Minor, on Habeas Corpus.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Paul A. James, Alan Oberstein, John Doyle and David P. Carleton, Deputy Public Defenders, for Defendant and Appellant and Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Thomas L. Willhite, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HASTINGS, J.**—Cassandra R. appeals from a juvenile order of wardship (Welf. & Inst. Code, § 602) upon a finding that she was guilty of committing petty theft (a misdemeanor) in violation of Penal Code section 484, subdivision (a). She was placed home on probation subject to certain terms and conditions.

She appeals contending that she was deprived of the assistance of counsel as a result of the juvenile court's "forcing" her attorney to "represent" her at the adjudication hearing in spite of his assertion that he was totally unprepared to proceed at that time.

Appellant also has filed a petition for a writ of habeas corpus which has been consolidated with this appeal. In her petition she raises the same contention, as she does on appeal.

On December 1, 1981, Deputy Public Defender John Doyle was appointed to represent appellant at her arraignment. Appellant denied the allegations of the petition, and Mr. Doyle noticed a motion to suppress evidence pursuant to section 700.1 of the Welfare and Institutions Code. The adjudication hearing was scheduled for December 29.

In Mr. Doyle's declaration attached to appellant's petition for a writ of habeas corpus, he states that on December 15, 1981, he was transferred from the Kenyon Juvenile Justice Center, where appellant's matter was being handled, to the Juvenile Services Division branch office in Long Beach. All of the matters to which he had been appointed, with a few exceptions, were reassigned to Deputy Sue Burrell who was transferred to the Kenyon Juvenile Justice Center on December 15. Among the cases reassigned to Burrell was the matter involving appellant.

On December 29, Doyle appeared at the Kenyon Juvenile Center for the adjudication hearing on one of the cases which had not been reassigned because of its complex nature. The hearing lasted until about 5 p.m., at which time he was informed by department 264 that appellant's matter was on calendar for the adjudication hearing. Doyle states that at that time he did not have the file in his possession since he had given it to Sue Burrell, and that he had done no preparation on the case because of his belief that the matter had been reassigned. He was told that there were no other deputy public defenders available in the Kenyon Juvenile Justice Center. He then informed Judge Clay, who was presiding in department 264, that he was not ready to proceed with appellant's adjudication hearing and made a motion to continue or trail the matter.

In her declaration, Sue Burrell states that on December 15 she was transferred to the Kenyon Juvenile Justice Center but retained a few of the complex cases that she had handled while assigned to the central office. Upon her transfer, she was assigned most of the cases upon which Doyle had been originally appointed, including appellant's matter. On December 29, she appeared for an adjudication hearing downtown on one of the few cases that had not been reassigned. When it became apparent that the matter would take a considerable amount of time, she called Deputy Gidlow and asked him to trail or

continue appellant's matter. She was assured that appellant's matter would be handled and she remained downtown to finish the other matter. She further states that appellant's case had been assigned to her as of December 15 and but for the fact she was engaged elsewhere, she would have personally appeared on December 29.

At the time the court called appellant's case the following colloquy occurred:

"MR. DOYLE: There will be a defense motion to trail, Your Honor.

"THE COURT: On what grounds?

"MR. DOYLE: I'm not prepared to handle the adjudication at this time.

"THE COURT: I don't understand. What do you mean you're not prepared?

"MR. DOYLE: I'm not prepared.

"THE COURT: Well, this is rather late. It's 5:00 in the afternoon to say you're not prepared. [¶] If it's a motion to trail, it will be denied. I assume prepared or otherwise that you will have to proceed. This is no time to declare to a court that you're not ready at 5:00 in the afternoon on the date that the matter is on trial.

"MR. DOYLE: Your Honor, unfortunately, there appears to have been a misunderstanding, but this was never to have been my matter to adjudicate.

"THE COURT: I can appreciate your dilemma, but, again, this should have been brought to the court's attention at some other time. [¶] Right now the matter—unfortunately, you are the attorney of record, and we will proceed. Call your witness."

Kevin Powers, an undercover agent for Sears, then testified as to his observations of appellant as she took four eyebrow pencils from the store without paying for them. When it came time for cross-examination by Deputy Doyle, the following occurred:

"MR. DOYLE: Counsel is not prepared to cross-examine this witness. I announced we were not ready to proceed.

"THE COURT: You do not wish to cross-examine?

"MR. DOYLE: I am not capable of cross-examining at this time. I'm going to move to strike the entire testimony on the—

"THE COURT: That motion will be denied. [¶] You can't come in here at this time of day—and witnesses have been waiting outside. The case has already been prepared. We have heard no word. I have heard no word from you. If you do not wish to cross-examine, then you do not have to.

"MR. DOYLE: I'm going to move to strike the entire testimony on grounds previously stated.

"THE COURT: Denied. [¶] You don't want to cross-examine?

"MR. DOYLE: I'm not prepared to cross-examine.

"THE COURT: Step down. [¶] Any other witnesses?

"MS. WILSON: No. People rest.

"THE COURT: All right, there will be no defense?

"MR. DOYLE: I'm not prepared to offer a defense.

"THE COURT: You're not offering one?

"MR. DOYLE: I'm not prepared to offer one.

"THE COURT: Whether you're prepared or not, you're not offering one?

"MR. DOYLE: I announced to the court I'm unable to proceed. There may be a defense available to this young woman. I'm not aware of it.

"THE COURT: There may be, but you haven't set it forth, nor have you advised the court that you were going to until after 5:00 when the case was called. So I assume if you do not wish to exercise your right to cross-examine, then minor rests.

"MR. DOYLE: For me to exercise any right to cross-examine the issue would be an exercise of frustration and futility.

"THE COURT: It could be, but I can only interpret what you're saying and what you're doing that there is no defense.

"MS. WILSON: I just wish to make it clear on the record—wasn't Mr. Doyle the attorney of record; isn't that right?

"THE COURT: As far as the court's records, he is.

"MR. DOYLE: You know as well—

"THE COURT: We're not establishing any dialogue between the two of you. This matter is before the court. [¶] You have rested?

"MR. DOYLE: Yes, Your Honor.

"THE COURT: All right, any argument?

"MS. WILSON: No, Your Honor. Submitted.

"THE COURT: No argument?

"MR. DOYLE: None, Your Honor.

"THE COURT: Fine."

The court then noted that he wanted "the record to clearly reflect that the matter has been calendared in this department for some time, even motions were noticed by Mr. Doyle, the attorney of record, at the time of the arraignment. The matter was calendared in this department for adjudication. There has been no notice either written or oral to this court that the minor would not be here. Witnesses checked in at 9 this morning in preparation for this case; that Mr. Doyle came into this courtroom and responded at 5 when the case was called this afternoon at that time to tell us that he was not prepared. [¶] The rest of the record will speak for itself."

Citing *People* v. *Locklar* (1978) 84 Cal.App.3d 224 [148 Cal.Rptr. 322], and *Little* v. *Superior Court* (1980) 110 Cal.App.3d 667 [168 Cal.Rptr. 72], appellant argues that she was deprived of the assistance of counsel when the juvenile court forced Deputy Public Defender Doyle to "represent" her even though he was unprepared to do so.

In *People* v. *Locklar, supra,* the defense counsel of record, Deputy Public Defender Fields, was ill on the date set for defendant's trial. Another deputy, Mr. Lawrence, appeared in court on Field's behalf and moved for a brief continuance so Fields could return and represent the defendant. Lawrence was totally unfamiliar with the case and Fields had taken the case file home with him. Lawrence told the court that if forced to go to trial, he would not participate because of his lack of familiarity with the case. The court denied the motion for a continuance and insisted on impaneling the jury. Lawrence merely sat next to the defendant and took no part in the jury selection process. After the jury was impaneled, the case was continued for a few days; Fields returned and moved for a mistrial. The court denied the motion and defendant was con-

victed. On appeal the court reversed the conviction, holding that "the result of the trial court's action in insisting that Mr. Lawrence 'represent' [the defendant],'when Lawrence took the position that he would not question jurors nor exercise any challenges, a position inconsistent with providing an effective defense, operated to deprive [defendant] of assistance of counsel, reversible error per se." (84 Cal.App.3d, at p. 229.)

In *Little* v. *Superior Court, supra,* 110 Cal.App.3d 667, in which the defendant was charged with willful cruelty toward a child, Deputy Public Defender Marcovecchio, who was assigned the case, could not appear on the date set for the preliminary hearing because of a calendaring error, and his supervisor, Deputy Public Defender Faldesy, appeared in his stead to request a short continuance so that Marcovecchio could represent the defendant. The deputy district attorney objected to a continuance because his witnesses were present. Faldesy informed the court that he was not prepared and would not participate in the preliminary examination. The court denied the request for a continuance and ordered the preliminary hearing to proceed. Faldesy remained silent throughout the hearing and defendant was held to answer. The Court of Appeal issued a peremptory writ of prohibition restraining further proceedings and held that the defendant had been denied his constitutional right to counsel at the preliminary examination. Relying on *Locklar,* the court held that "a defendant's right to counsel in a *preliminary hearing,* as at trial, is not satisfied by the mere physical presence of an attorney who remains silent and does not participate on behalf of the defendant." (Italics in original; 110 Cal.App.3d, at p. 671.)

■ The People argue that unlike *Locklar* and *Little,* Doyle was the defense counsel of record, had represented appellant at her arraignment, and "was familiar with the case."

It is true that Doyle was defense counsel of record and had previously appeared for appellant; however, it appears from the declarations that Doyle was, in fact, no longer handling appellant's case and that it had been transferred to Sue Burrell. Doyle did not have the file in the matter as he had previously given it to Ms. Burrell, and he was totally unprepared to proceed in the matter. Doyle attempted to inform the court that he was no longer appellant's counsel, but the court merely stated that he was "attorney of record" and told the People to proceed with the presentation of evidence. This does not appear to be a situation, as in *People* v. *McKenzie,*[1] where counsel intentionally refused to participate even

---

[1]The question of whether a defense counsel's intentional refusal to participate in an adult criminal trial requires reversal on the grounds of ineffective assistance of counsel is currently pending before the Supreme Court in *People* v. *McKenzie* (May 20, 1982, Crim. 22615). In *McKenzie,* the defendant was found guilty of various criminal offenses, after the deputy public defender intentionally refused to participate on defendant's behalf in the trial other than to sit at

though prepared or capable of being prepared. There was a calendaring problem and Ms. Burrell was unable to appear on appellant's behalf. It was only by mere coincidence that Doyle was available in the Kenyon Juvenile Justice Center at the time of appellant's adjudication hearing.

Under these circumstances, it appears that appellant was deprived of effective assistance of counsel (see *In re William F.* (1974) 11 Cal.3d 249, 254 [113 Cal.Rptr. 170, 520 P.2d 986]), and the court erred in denying the motion for a continuance.

The orders are reversed. This decision by the court addresses the same issue raised by the writ of habeas corpus, therefore the writ is dismissed as moot.

Feinerman, P. J., and Stephens, J., concurred.

---

the counsel table. The Court of Appeal affirmed the conviction, holding that counsel's actions were an intentional tactical decision to create error by denying his client effective representation of counsel and that defendant's failure to object to counsel's actions and his intentionally feigning incompetency to be tried, although he was competent and able to cooperate, implied defendant's approval of the tactics and did not amount to prejudicial error.